UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DALLAS LONGWITH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:13-CV-1 |
| | ) |
| THE BRADLEY COUNTY | ) Judge Curtis L. Collier |
| SHERIFF'S DEPARTMENT, | ) |
| BRADLEY COUNTY, TENNESSEE, | ) |
| and SHERIFF JAMES RUTH | ) |
| | ) |
| Defendants. | ) |

# **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendants Bradley County Sheriff's Department,[1] Bradley County, Tennessee, and Sheriff James Ruth (collectively "Defendants") (Court File No. 15). Defendants seek summary judgment on the complaint filed by Plaintiff Dallas Longwith ("Plaintiff"), a former Bradley County Sheriff's Deputy who claims Defendants violated his First Amendment right to political association by terminating his employment (Court File No. 1). For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment.

## **I. FACTS**

Sheriff James Ruth ("Sheriff Ruth") was elected Bradley County Sheriff in 2010. Eric Watson joined the Bradley County Sheriff's Department in 1999 and had attained the rank of captain

---

[1] The Court notes that the agency's proper name is the Bradley County Sheriff's Office, but the Court will use the common moniker, Bradley County Sheriff's Department, in accordance with the complaint and the parties' briefs.

when he left in 2011 (Court File No. 19-2, Watson Aff., ¶ 2). From 2006 to present, Watson has represented the 22nd District in the Tennessee House of Representatives, which comprises Meigs and Polk Counties and parts of Bradley County. The precise circumstances of Watson's departure from the Sheriff's Department in 2011 are disputed, but evidence shows that Sheriff Ruth gave Watson an ultimatum to tender his resignation or be fired (*id.*, ¶ 4; Court File No. 15-3, Ruth Dep., p. 22). Sheriff Ruth asserts that Watson failed to properly fill out time sheets, a contention Watson denies (Court File No. 15-3, Ruth Dep., p. 22; Court File No. 19-2, Watson Aff., ¶¶ 3-4). Instead of violating any department policy, Watson maintains he was "forced out of the Sheriff's Department because Jim Ruth saw me as a political rival and was trying to destroy my career" (*id.*). Watson left in early October 2011 (Court File No. 15-5, Ruth Aff., ¶ 14). Sheriff Ruth denies having known before Watson's departure that he was considering running for sheriff in 2014, but noted that "[n]o sooner he'd left the agency, I started hearing that" (Court File No. 15-3, Ruth Dep., pp. 24-25).

Plaintiff began working as a patrolman for the Bradley County Sheriff's Department in 2006 and was transferred in 2010 to a court officer position (Court File No. 15-2, Longwith Dep., pp. 10, 12). Plaintiff was friends with Watson and the two would sometimes have lunch together (*id.*, p. 116). Plaintiff testifies that in 2011 he began assisting Watson in the formative stages of a potential bid for sheriff in 2014 (*id.*, pp. 115-16). The parties disagree about how public Plaintiff's support for such a run was, including whether Sheriff Ruth was aware of it. Plaintiff and Watson testify that Plaintiff advocated for a 2014 Watson run for sheriff to Plaintiff's friends, members of his church, neighbors, and some coworkers (*id.*, p. 116; Court File No. 19-2, Watson Aff., ¶ 8). Asked whether his support was public knowledge, Plaintiff said "[n]o. I didn't -- no. People knew, but I did not make it public" (Court File No. 15-2, Longwith Dep., p 84).

2

After Watson left the Sheriff's Department and before Plaintiff was fired, Plaintiff attended a block party where he assisted at a booth Watson operated in his capacity as a state representative (Court File No. 19-1, Longwith Aff., ¶5; Court File No. 19-2, Watson Aff., ¶ 8).  Plaintiff and Watson note that Sheriff Ruth and his command staff attended the block party and were likely to have observed Plaintiff at Watson's booth (*id.*).  Plaintiff and Watson also contend that it was "well known" that if Watson ran for sheriff in 2014, Plaintiff would support him (Court File No. 19-1, Longwith Aff., ¶3; Court File No. 19-2, Watson Aff., ¶ 7).  Sheriff Ruth denies that before Plaintiff was terminated he knew Plaintiff would support a Watson bid for sheriff in 2014 or that Plaintiff had engaged in any activities to support such a run (Court File No. 15-5, Ruth Aff., ¶¶ 8-9).

In December 2011 an internal affairs investigation into Plaintiff was launched after the Sheriff's Department received complaints from Plaintiff's neighbors about him engaging in offensive conduct (Court File No. 15-5, Ex. A, Internal Affairs Report, pp. 1-2) ("Report"). Different neighbors filed complaints with the Sheriff's Department in August and December 2011, expressing concern over Plaintiff regularly wearing boxer shorts and nothing else while working in his front yard (*id.*).  Plaintiff asserts that he wore cotton flannel shorts in his yard to stay cool and does not consider them underwear (Court File No. 19-1, Longwith Aff., ¶ 10).  He also questions the motives of the complainants (*id.*, ¶¶ 4, 6).  He does not, however, address others in the neighborhood who also told the internal affairs investigator that Plaintiff's behavior was inappropriate and offensive (Court File No. 15-5, Ex. A, Report, p. 5).

The Report determined that Plaintiff failed to stop wearing only the garment in public even after his supervising officer confronted him with the August complaint and told him to cease such

3

behavior because it was damaging Plaintiff's and the Sheriff's Department's reputation (*id*., pp. 4-5). Pursuant to the findings of the Report, the Sheriff's Department concluded that, *inter alia*, Plaintiff had engaged in behavior unbecoming of a deputy sheriff and had failed to comply with a direct order of a superior, in violation of Sheriff's Department policies 26.1.5 § D6 and 26.1.7 § A4, respectively (Court File No. 15-5, Ex. C, Letter of Termination). Plaintiff was terminated on January 4, 2012 based on the results of the investigation (*id*.).

A year after being terminated Plaintiff filed the present suit under 42 U.S.C. § 1983, alleging that the Sheriff's Department violated his First Amendment right to political association by firing him because of his support for Watson (Court File No. 1). Defendants moved for summary judgment (Court File No. 15). Plaintiff filed a response (Court File No. 19) and Defendants replied (Court File No. 20).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."

4

*Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.   ANALYSIS

#### A. Proper Parties

Defendants are correct that the Bradley County Sheriff's Department is not a proper party to this action, as a sheriff's department in Tennessee is not a suable entity under § 1983. Rather, the local government entity the agency represents should be sued. *See Lamb v. Tenth Judicial Dist. Drug Task Force*, 1:13-CV-73, 2013 WL 1896968 (E.D. Tenn. May 3, 2013) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)); *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *1 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts

in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit."). The Court therefore dismisses Plaintiff's claim against the Bradley County Sheriff's Department on the ground it is not a suable entity.

Also, to address another jurisdictional issue Defendants' raise, the Court notes that Sheriff Ruth has not been sued in his individual capacity. For a claim to lie against a public officer in his or her individual capacity, plaintiffs should set forth clearly in their pleadings that they are suing defendants in their individual capacity for damages, not simply in their capacity as officials. *See Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992) (citing *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir.1989)). However, "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her individual capacity, failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (internal quotations marks and citations omitted). As Defendants correctly point out in their motion for summary judgment, Plaintiff has made no indication, whether in his complaint or in the course of the proceedings, that Sheriff Ruth is being sued in his individual capacity. Further, in Plaintiff's response to summary judgment, he did not contest Defendants position on the issue. *See Moore*, 272 F.3d at 772 (noting that courts may look to "pleadings, such as a response to a motion for summary judgment, to determine whether proper notice had been given"). Therefore, this suit is properly against Bradley County and Sheriff Ruth in his official capacity. And because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," the suit is in effect against Bradley County.

### B. Retaliation

Plaintiff alleges Defendants violated his First Amendment rights by firing him for his

political association with Watson. To establish a *prima facie* claim of retaliation for engaging in constitutionally protected activity, Plaintiff must prove the following elements: "(1) [he] engaged in constitutionally protected activity; (2) the defendant took adverse action against [him] that would deter a person of ordinary firmness from engaging in the protected conduct; and (3) the adverse action was 'substantially motivated' by [Plaintiff's] protected conduct." *Van Huss v. Shoffner*, 81 F. App'x 17, 20 (6th Cir. 2003) (quoting *Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 431 (6th Cir. 2000) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). In short, the question is "whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity." *Sowards*, 203 F.3d at 431 (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 520-21 (6th Cir.1999)). If Plaintiff satisfies these elements, "the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Id.* (citing *Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir.1997), cert. denied, 523 U.S. 1121 (1998)). The parties here do not dispute that the second prong is met, as being terminated is certinaly an "adverse action . . . that would deter a person of ordinary firmness from engaging in the protected conduct." *Van Huss*, 81 F. App'x at 20.

   1. **Protected Conduct**

The right of political association is well established under the First Amendment, as "'political belief and association constitute the core of those activities protected by the First Amendment.'" *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69 (1990) (quoting *Elrod v. Burns*, 427 U.S. 347, 356 (1976)). Naturally, "[s]upport of a political candidate falls within the scope of the right of political association." *Sowards*, 203 F.3d at 432 (citing *Elrod*, 427 U.S. at

7

356-57).

Defendants argue Plaintiff has not raised a genuine dispute of fact as to whether he actually engaged in protected political activity. Defendants aver that Plaintiff's speaking privately to friends, family, and coworkers about Watson potentially running for sheriff in 2014, and Plaintiff's helping at a block party booth Watson set up in his capacity as a state legislator, does not constitute protected political activity in the context of a retaliation claim. The Court assumes, without deciding, that a jury could determine such activity is protected political association. The question is mooted, however, by Plaintiff's inability to point to evidence that his termination was substantially motivated by such political activity.

**2. Causal Connection**

To show Plaintiff's termination was "substantially motivated" by his political activities in favor of Watson, Plaintiff must first show that Sheriff Ruth was aware of the protected activities. Although defendants' knowledge that plaintiffs have engaged in protected conduct is not a separate element of a retaliation claim, "such knowledge is a logical prerequisite to finding that plaintiffs' termination was substantially motivated by their engagement in constitutionally protected activity." *Van Huss*, 81 F. App'x at 23 (explaining that "a defendant cannot terminate employees due to the exercise of their First Amendment rights in the absence of knowledge that they were doing any such thing"); *see also Edgar v. City of Collierville*, 160 F. App'x 440, 443 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 387 n. 3) (holding that "lack of knowledge is fatal to [the plaintiff's] claim, because 'the defendant must have known about the protected activity in order for it to have motivated the adverse action'").

The case of *Hall v. Tollett* is instructive. 128 F.3d 418 (6th Cir. 1997). In *Hall*, a sheriff's

8

deputy, James Cooper, was fired after supporting the sheriff's opponent during the election preceding Cooper's termination. The district court granted summary judgment in favor of the sheriff, dismissing Cooper's First Amendment retaliation claim. The United States Court of Appeals for the Sixth Circuit affirmed, concluding that Cooper did not present evidence that the sheriff was aware he supported the rival candidate, despite the fact that "Cooper testified at deposition that he showed his support for [the sheriff's opponent] by putting up campaign signs all over the county and putting bumper stickers on his truck." *Id.* at 426. The court noted that, although he showed some campaign activity, Cooper essentially "relie[d] only on his claim that his support for [the sheriff's opponent] was 'common knowledge' as evidence that defendant knew of his political inclinations." *Id.* The court noted that even after drawing all reasonable inferences in the plaintiff's favor,

> plaintiff still has not met his burden of presenting significant and probative evidence that could support a conclusion that he was fired in retaliation for his political affiliation. *He has put forth no evidence that defendant actually knew of his support of defendant's political rival* or that this affiliation motivated his dismissal.

*Id.* at 426-27 (emphasis added).

Similarly, Plaintiff in the instant case has not put forth evidence sufficient to overcome summary judgment because he has not demonstrated that Sheriff Ruth knew about—never mind fired him because of—Plaintiff's activities in support of Watson's potential 2014 bid for sheriff. As the *Hall* court noted, assertions that political support was "common knowledge" is insufficient to demonstrate knowledge on a defendant's part. Additionally, Plaintiff's private conversations about a potential Watson run is also insufficient to show Sheriff Ruth knew about Plaintiff's political activities. *See Hall*, 128 F.3d at 426 (holding that another plaintiff's "talk[ing] to family and friends about his support for [defendant's opponent]" failed to raise "a genuine question of whether defendant had knowledge of plaintiff['s] endorsement of defendant's opponent").

9

Further, the Court is not convinced a jury could infer that Sheriff Ruth knew Plaintiff supported Watson's potential run for sheriff merely because Plaintiff assisted Watson at his block party booth. Plaintiff states that Sheriff Ruth and his command staff also attended the block party, yet Plaintiff points to no evidence suggesting Sheriff Ruth saw Plaintiff there or heard about it later. Moreover, even if Sheriff Ruth did see Plaintiff at Watson's booth, that is weak evidence to show the sheriff understood Plaintiff to be campaigning for a potential Watson run for sheriff in three years. At the time, in fact, Watson was running to retain his seat in the Tennessee House of Representatives. Mere association with a political figure does not mean one supports the person's unannounced, potential bids for another office.

In *Hall*, "[p]utting up campaign signs all over the county and putting bumper stickers on his truck," in the heat of an ongoing election was insufficient to put the defendant sheriff on notice. There, one could certainly imagine word getting back to the sheriff that the plaintiff—driving around town with bumper stickers favoring the sheriff's opponent—supported the opponent. But this was still insufficient for the court to conclude there was a genuine factual dispute. A plaintiff must show firmer evidence of a defendant's awareness. Here, it is difficult to see how assisting at the booth of a candidate running for the state legislature, three years before he might challenge the sheriff, at a block party where the sheriff and his staff may or may not have seen Plaintiff, provides sufficient "evidence that defendant actually knew of his support of defendant's political rival." *Id.* at 427.

Plaintiff falls back on his assertion that because it was "common knowledge" that he was friends with Watson and would support him if he ran for sheriff in 2014, this must have been why he was fired. Such speculation does not aid Plaintiff in overcoming his burden, however, as "rumors, conclusory allegations and subjective beliefs ... are wholly insufficient evidence to defeat

10

a motion for summary judgment." *Coffey v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 194 F.3d 1311(6th Cir. 1999) (internal quotation marks omitted) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)); *see also Hall,* 128 F.3d at 426 (finding insufficient plaintiff's "claim that his support for [the sheriff's opponent] was 'common knowledge' as evidence that defendant knew of his political inclinations.")

In sum, even when viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff failed to present sufficient evidence that Sheriff Ruth knew of his political activities in support of a possible Watson challenge; thus Plaintiff has "not met his burden of presenting significant and probative evidence that could support a conclusion that he was fired in retaliation for his political affiliation." *Id.* at 426-27. Having concluded that Plaintiff failed to point to evidence sufficient to support a *prima facie* case of retaliatory discrimination, the Court need not shift the burden and explore whether Defendants would have terminated Plaintiff absent the protected conduct. Likewise, the Court need not determine whether there was a policy or custom present that would trigger municipal liability.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 15). There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**


Case 1:13-cv-00001-CLC-WBC Document 25 Filed 12/16/13 Page 11 of 12 PageID #: 303

**UNITED STATES DISTRICT JUDGE**